# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MERCY BARNES,** | * |
| Plaintiff, | * |
| v. | * Case No. 12-cv-3712-RWT |
| **TRINITY PROTECTION SERVICES, INC.,** | * |
| Defendant. | * |

## MEMORANDUM OPINION

On November 13, 2012, Plaintiff Mercy Barnes filed a three-count Complaint against Defendant Trinity Protection Services, Inc. ("Trinity") in the Circuit Court for Prince George's County, Maryland. Compl., ECF No. 2. Parks claims that during the course of her employment as a security officer for Trinity, Trinity discriminated against her on the basis of her national origin (Ghanaian), retaliated against her for opposing such discrimination, and wrongfully terminated her, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-2000e-17, and the Maryland Human Rights act. Compl. ¶¶ 2-26, ECF No. 2. On December 19, 2012, Trinity removed Barnes's action to this Court. ECF No. 1.

## BACKGROUND

Trinity is a security corporation organized under the laws of Maryland with its principal office in Upper Marlboro, Maryland. Compl. ¶ 4, ECF No. 2. Mercy Barnes, a Ghanaian female, worked for Trinity as a Lieutenant Security Officer from August 2011 through April 2012. *Id.* ¶ 3.

On or about February 28, 2012, Barnes informed Trinity management that her supervisor, Akerele Chinweoke, took out at a loan at a Maryland bank using Barnes's payroll stub and

payroll information. *Id.* ¶ 7. Chinweoke allegedly told Barnes that she obtained the loan using Barnes's payroll information. *Id.* During a meeting on February 29, 2012, Barnes provided "complete information" to Trinity's management about her interaction with Chinweoke concerning the loan. *Id.* ¶ 8. Trinity's management officials "immediately accused [Barnes] of making false statements about" Chinweoke. *Id.*

On March 5th and 6th of 2012, Barnes reported the loan incident involving Chinweoke to the police. *Id.* ¶ 9. The police visited Barnes at her workplace. *Id.* On March 6, 2012, Barnes received a "Letter of Reprimand" from Trinity indicating that she had made unsubstantiated allegations against Chinweoke. *Id.* ¶ 10. Barnes was also suspended from work for three days without pay. *Id.*

On March 8, 2012, while she was at work, Barnes received a call from another supervisor, Madison Agnew. *Id.* ¶ 11. Barnes alleges that Agnew "repeatedly called [her] a liar," "continuously made these same remarks to [her] in front of other employees," and "continuously yelled [at] and monitored her on an ongoing basis." *Id.* During a conference call with Trinity's human resources and management officials on March 20, 2012, Barnes "expressed to management that they were taking sides" and "said that she had told the truth and now she was being treated unfairly because she" is Ghanaian. *Id.* ¶ 12. Barnes then stated that "management was discriminating against her." *Id.* Management officials allegedly told Barnes that "she should not have summoned police to the work place." *Id.*

On April 2, 2012, Agnew told Barnes that another security officer "wrote her up" because she "had not worn her hair and hat properly on March 19, 2012." *Id.* ¶ 13. Barnes maintains that "this was false" because she "was in full and proper uniform and hair dress" that day. *Id.* On April 6, 2012, Barnes received a termination of employment notice, which indicated that she was

terminated because of a uniform violation.  *Id.* ¶ 14.

Barnes alleges, however, that the sole basis for her termination was that she "complained about disparate treatment/discrimination and she reported that she had knowledge of a criminal event that had taken place and the police responded to her work place to get additional information from her."  *Id.*  She claims that she "fully and competently perform[ed] all duties assigned to her and reported to work in full and proper uniform and hair dress."  *Id.* ¶ 15.  Barnes alleges that she "refused to be an accessory to criminal activity and notified law enforcement."  *Id.* ¶ 16.

On July 13, 2012, Barnes filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC").  *Id.* ¶ 5.  On October 18, 2012, she received a Right to Sue notice from the EEOC.  *Id.* ¶ 6.

## PROCEDURAL HISTORY

On November 13, 2012, Barnes filed a Complaint in the Circuit Court for Prince George's County, Maryland.  ECF No. 2.  On December 19, 2012, Trinity removed the action to this Court.  ECF No. 1.  On December 28, 2012, Trinity filed a Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 8.  Barnes filed an Opposition to Defendant's Motion to Dismiss, *Nunc Pro Tunc*,[1] on January 15, 2013.  ECF No. 9.  On January 30, 2013, Trinity filed a Reply in Support of its Motion to Dismiss.  ECF No. 11.

On January 24, 2013, the Court issued notice of a hearing on Trinity's Motion to Dismiss, scheduled for May 29, 2013, at 10:30 a.m.  ECF No. 10.  On May 28, 2013, the night before the scheduled hearing, Barnes filed a Motion for Leave to File an Amended Complaint.  ECF No. 12.

---

[1] Barnes's Opposition was due on January 14, 2013.  Her attorney writes in her Opposition that she tried to file the document on January 14, 2013, but she had to retype the document and file it the next day.  Pl.'s Opp'n 1 n.1, ECF No. 9.

3

During the hearing on May 29, 2013, the Court did not hear argument on Trinity's Motion to Dismiss in light of Barnes's Motion for Leave to Amend. On June 12, 2013, Trinity filed an Opposition to Barnes's Motion to Amend Complaint. ECF No. 15. Barnes filed a Reply to Trinity Protection Services, Inc.'s Opposition to Plaintiff's Motion for Leave to Amend Her Complaint on June 26, 2013. ECF No. 16. On July 23, 2013, Trinity filed a Motion for Leave to File a Surreply to the Opposition to the Motion to Amend the Complaint. ECF No. 18. On August 7, 2013, Barnes filed an Opposition to Defendant's Motion for Leave to File Surreply. ECF No. 19.

## **STANDARD OF REVIEW**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Simmons & United Mortg. & Loan Invest,* 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (quotation and emphasis omitted). "Thus, '[i]n reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) . . . [a court] must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" *Monroe v. City of Charlottesville*, 579 F.3d 380, 386 (4th Cir. 2009) (quoting *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009)).

**ANALYSIS**

**I.      Count I: Wrongful Termination**

Trinity moves to dismiss Barnes's claim for wrongful termination because applicable law does not recognize her cause of action. Barnes alleges that Trinity's "sole basis" for terminating her employment was that she "complained about disparate treatment/discrimination and she reported that she had knowledge of a criminal event that had taken place and the police responded to her work place to get additional information from her." Compl. ¶ 14, ECF No. 2.

Although Trinity is a Maryland corporation, Barnes worked in Virginia during the incidents at issue, contacted Fairfax County police regarding the loan incident, and lives in Virginia. *See* Def.'s Reply, ECF No. 11 at 8-10. "Normally the choice of law rule of the forum state applies to determine which state's substantive rules of decision apply," *Temporaries, Inc. v. Maryland Nat'l Bank*, 626 F. Supp. 1025, 1027 (D. Md. 1986) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941)), and here the forum state is Maryland.

"For tort claims, Maryland generally adheres to the *lex loci delicti commissi*, or place of harm, principle to determine the applicable state's substantive law." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011). "Under that approach, when a Maryland state court is confronted with multistate tort litigation, that court must apply the law of the place of injury as to all matters of substantive law." *Lewis v. Waletzky*, 31 A.3d 123, 129 (Md. 2011). Under this approach, Virginia law governs Barnes's claim for unlawful discharge. *See, e.g.*, *Jones v. Giant Foods, Inc.*, No. Civ. JFM–00–3469, 2000 WL 1835393, at *5 (D. Md. Nov. 27, 2000) ("Because [the plaintiff] lived and worked in Virginia, and the employment relationship between her and Giant was centered in Virginia, its substantive law applies.").

Under Virginia law, Barnes's claim for wrongful discharge should be dismissed, because

5

Virginia does not recognize her cause of action—whether it is premised on reporting conduct to the police or on discrimination—and she does not cite Virginia statutory law for this Count. *See id.* (observing that "Virginia does not recognize a separate cause of action for wrongful termination based on race," and that a "Virginia plaintiff must seek relief for discriminatory termination under either a state or federal civil rights statute.").

Barnes's claim would also fail under Maryland law. Maryland recognizes a limited "abusive discharge" claim in "situations involving the actual refusal to engage in illegal activity, or the intention to fulfill a statutorily prescribed duty." *Adler v. American Standard Corp.*, 830 F.2d 1303, 1307 (4th Cir. 1987); *see also King v. Marriott Internat'l Inc.*, 866 A.2d 895, 901 (Md. 2005) (noting that to establish the narrow tort of wrongful discharge, the employee must prove "that (1) she was discharged; (2) her discharge violated a clear mandate of public policy; and, (3) there is a nexus between the employee's conduct and the employer's decision to fire the employee."). Count I of Barnes's Complaint does not identify a "clear mandate of public policy" that Trinity violated in terminating her employment, which is fatal to her claim for abusive discharge. *See Tall v. MV Transportation*, No. RWT 12–417, 2012 WL 4480720, at *5 (D. Md. Sept. 27, 2012) (dismissing a claim for wrongful termination where the plaintiff "alleged no public policy that was violated by his termination").

Further, "where the plaintiff complains of employment discrimination based on race, color, religion, sex, or national origin, Title VII provides an adequate remedy," and therefore, under Maryland law, "no claim for abusive discharge can lie" for Barnes's employment discrimination claim. *Orci v. Insituform East, Inc.*, 901 F. Supp. 978, 983 (D. Md. 1995) (citing *Chappell v. Southern Maryland Hospital, Inc.*, 578 A.2d 766 (Md. 1990)). For these reasons, the Court will grant Trinity's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6),

ECF No. 8, as to Barnes's claim for abusive discharge.

## II.     Count II: Discrimination -- National Origin

In Count II of her Complaint, Barnes asserts a claim for "national origin discrimination." Compl. ¶¶ 20-24, ECF No. 2. She alleges that she is Ghanaian and that she was treated differently from similarly situated persons of non-Ghanaian origin. *Id.* ¶ 21. She contends that "non-Ghanaian origin employees were treated more favorably by way of uniform dress and disciplinary actions." *Id.* ¶ 22. Title VII makes it unlawful for an employer to "discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a Title VII claim for discrimination based on national origin, Barnes must show that: (1) she "is a member of a protected class"; (2) she "has satisfactory job performance"; (3) she "was subjected to adverse employment action"; and (4) "similarly situated employees outside of [her] protected class received more favorable treatment." *Chavan v. IBM Corp.*, Civil Action No. AW–09–1473, 2010 WL 2651647, at *3 (D. Md. June 30, 2010).

In *Chavan*, the plaintiff claimed that "he suffered an adverse employment action motivated by discrimination based on his national origin." *Id.* at *2. There, Judge Alexander Williams dismissed the plaintiff's complaint because the plaintiff "failed to state a plausible claim for relief in his Complaint, which contain[ed] numerous conclusory allegations of discrimination based on national origin." *Id.* at *3. The plaintiff alleged that he was "an Indian American, was offered and accepted a position with IBM, which IBM later rescinded, and that '[o]ther similarly situated employees and potential recruits not of Plaintiff's national origin were not subject to the same discriminatory treatment.'" *Id.* Judge Williams observed that the plaintiff "sufficiently pled that he is a member of a protected class as an Indian American," as

7

well as an adverse employment action, but provided no factual support that he performed his job satisfactorily and his "conclusory allegation that similarly situated employees not of Indian origin were not treated the same way [was] bereft of any facts or specifics to set forth a cognizable claim." *Id.*

Barnes's claim here is similarly "bereft of any facts or specifics to set forth a cognizable claim" for discrimination based on her national origin. *Id.* Her Complaint contains only conclusory assertions to support this claim, such as that "non-Ghanaian origin employees were treated more favorably by way of uniform dress and disciplinary actions." Compl. ¶ 22, ECF No. 22.

Moreover, the facts she alleges suggest that Trinity's adverse employment actions against her were more likely tied to her allegations that her colleague illegally used her pay stub information to secure a loan, rather than related to her national origin. She alleges that she told management that "she was being treated unfairly because she was Ghanaian" on March 20, 2012, during a meeting regarding her suspension for making unsubstantiated allegations against her colleague. *Id.* ¶¶ 9-12. During an earlier meeting on February 29, 2012, Barnes informed management about her colleague's loan issue, and Barnes was suspended on March 6, 2012. *Id.* ¶¶ 7, 10. The Complaint suggests that she made allegations of national origin discrimination only *after* her suspension. For these reasons, the Court will grant Trinity's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 8, as to Barnes's claim for discrimination based on national origin.

### III. Count III: Reprisal (Retaliation)

In Count III of her Complaint, Barnes asserts a claim for "reprisal." She alleges that "her supervisors and managers were aware of her opposition to discriminatory treatment and as a

result she was subsequently subjected to ongoing harassment and an adverse action because she opposed discriminatory treatment." Compl. ¶ 25, ECF No. 2. Title VII provides that it is unlawful for an employer to discriminate against an employee because she "has opposed" an unlawful employment practice, or because she has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To state a claim for retaliation under Title VII, an employee must allege: (1) that she "engaged in a protected activity"; (2) that her employer "acted adversely against" her; and (3) that "the protected activity was causally connected to the adverse action." *Holland v. Washington Homes*, 487 F.3d 208, 218 (4th Cir. 2007); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005) (same).

"[P]rotected activities fall into either the opposition clause or the participation clause" of Title VII's applicable section. *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999). "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) ("An employer may not . . . take adverse employment action against an employee for opposing discriminatory practices in the workplace."). "Participation activity encompasses . . . . making a charge, testifying, or participating in any manner in a Title VII investigation, proceeding, or hearing." *Kubicko*, 184 F.3d at 551 ("[A]s long as an employee complains to his or her employer or participates in an employer's informal grievance procedure in an orderly and nondisruptive manner, the employee's activities are entitled to protection.").

Trinity moves to dismiss this Count, relying on *Rodriguez v. Cellco Partnership*, Civil No. WDQ–11–3299, 2012 WL 2904809, at *3 (D. Md. July 13, 2012). There, the court

observed that "[t]o state a claim for retaliatory discharge, a plaintiff must . . . allege facts showing that she was fired because of her protected activity." *Id.* at *4. The Court decided that the plaintiff "failed to state a claim for retaliatory discharge," because she did not allege "facts establishing that she engaged in a protected activity." *Id.* She did "not allege that her 'unresolved complaints' involved claims of race or national origin discrimination," and the court noted that "[m]ere complaints about unfair treatment are not protected activity." *Id.* Trinity argues that the Court here should likewise dismiss Barnes's antiretaliation claim because there is no causal connection between the protected activity and her termination. Def.'s Mot. to Dismiss 13. Barnes received her letter of reprimand on March 6, 2012, Compl. ¶ 10, and Trinity maintains that Barnes's alleged "protected activity" came after the adverse actions, without any causal connection between the activity and adverse actions.

Barnes alleges that during a conference call with Trinity's human resources and management officials on March 20, 2012, she "expressed to management that they were taking sides" and "said that she had told the truth and now she was being treated unfairly because she" is Ghanaian. *Id.* ¶ 12. On April 6, 2012, Barnes received a termination of employment notice, which indicated that she was terminated because of a uniform violation. *Id.* ¶ 14. Barnes Complaint fails to support that she was terminated or mistreated because of her participation in any protected activity. For these reasons, the Court will grant Trinity's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 8, as to Barnes's claim for reprisal/retaliation.

## IV. Motion for Leave to Amend

On May 28, 2013, on the eve of this Court's hearing concerning Trinity's Motion to Dismiss and over four months after filing an Opposition to Trinity's Motion, Barnes filed a

Motion for Leave to File an Amended Complaint. ECF No. 12. As a result of Barnes's Motion, the Court did not hear argument concerning Trinity's Motion to Dismiss, but provided Trinity with time to review Barnes's Motion and respond accordingly. On June 12, 2013, Trinity filed an Opposition to Barnes's Motion to Amend Complaint, arguing that the Court should deny Barnes's Motion because her proposed amendments would be futile. ECF No. 15 at 1.

Barnes may amend her Complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* But the Court has discretion to deny a plaintiff's motion to amend her complaint where it would be futile "because the proposed amendments could not withstand a motion to dismiss." *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

Barnes seeks to amend the factual portion of her Complaint to include allegations concerning one of Trinity's management officials, Madison Agnew. ECF No. 14 at ¶ 7. She includes the substance of a written notice that she sent to corporate headquarters, dated February 23, 2012, which concerns her claims about her colleague's manipulation of payroll stubs to obtain a loan. *Id.* Barnes alleges that Agnew "harshly scolded [Barnes] for sending the February 23, 2012 notice to headquarters in Maryland, and he repeatedly asked [her] who else had copies of the notice." *Id.* Further, Agnew allegedly "mocked [Barnes's] accent during the course of" a meeting concerning Barnes's notice. *Id.* Barnes alleges that "Agnew had previously mocked [her] accent during the course of her employment." *Id.* Barnes also alleges that on March 8, 2012, "Agnew again repeatedly made comments to Plaintiff mocking her speech and accent." *Id.* at ¶ 11. "[W]hen [Barnes] received work notices, Agnew delivered the notices to [Barnes,] asking if she wanted him to read the notices." *Id.* "In his communication to her, [Agnew] would imitate [Barnes's] accent." *Id.*

With respect to her claim for discrimination based on national origin, Barnes adds an allegation "that she was subjected to severe and pervasive harassment which culminated into a hostile environment as to alter the terms and conditions of her employment." *Id.* at ¶ 22. Barnes also adds an allegation to regarding her claim for wrongful discharge:

> . . . Defendant's corporate management officials terminated Plaintiff because she reported criminal activity by corporate officials to law enforcement. As a result, Plaintiff was terminated from employment in retaliation for reporting a suspected crime to law enforcement officials, which is contrary to public policy. Md. Code Ann., Crim. Law §§ 9-303(a) and 9-301(d). Plaintiff alleges that Ms. Chinweoke Akerele provided her with information about a crime she had committed, using Plaintiff's pay information and documents. After reporting the illegal incidents to Maryland headquarters, management officials in Maryland came to Plaintiff's work assignment and made efforts to dissuade Plaintiff from continuing her assertions about the illegal activity, and eventually Plaintiff was terminated. Such action caused Plaintiff injury.

*Id.* at ¶ 27.

Barnes's proposed amendments in support of her claim for discrimination based on national origin would be futile. Her allegations concerning Agnew's imitation of her accent are not among the assertions that Barnes included in her administrative charge, which includes a bare statement that she was discriminated against based on her "national origin (Nigerian)." *See Chacko v. Patuxent Institution*, 429 F.3d 505, 509 (4th Cir. 2005) ("[I]f the factual foundation in the administrative charge is too vague to support a claim that is later presented in subsequent litigation, that claim will also be procedurally barred."). Indeed, Barnes even misidentifies her national origin in the charge. Her amended Complaint asserts that she is Ghanaian, not Nigerian. ECF No. 14 at ¶ 3.

Because her allegations were not encompassed by her administrative charge, Barnes failed to exhaust her administrative remedies. *See Chacko*, 429 F.3d at 509 ("Our cases make clear that the factual allegations made in formal litigation must correspond to those set forth in

the administrative charge."). And contrary to Barnes's assertions in her Reply to Trinity's Opposition to her Motion for Leave to Amend Her Complaint, ECF No. 16, Barnes cannot rely on matters included only in her intake questionnaire to save her claim. *See Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 409 (4th Cir. 2013) ("Any Title VII claims based on allegations included only in [plaintiff's] intake questionnaire and letters are . . . outside the jurisdiction of the federal courts.").[2]

Even if Barnes's proposed allegations concerning Agnew's imitation of her accent were properly before the Court, her Complaint would not survive a motion to dismiss because the allegations do not appear to relate in any way to Barnes's discipline or termination, and she has not alleged, for example, that her position was filled by someone outside of her protected class. *Cf. Nana-Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc.*, 921 F. Supp. 2d 470, 484 (D. Md. 2013) ("With respect to national origin, Plaintiff asserts that, on at least two occasions, [her supervisor] imitated her accent and once stated, 'I don't like your accent.' . . . These comments may constitute evidence of a discriminatory attitude on the part of [her supervisor], but they were not in any way linked to Plaintiff's termination.").

Barnes's proposed amendments also fail to save her claim for wrongful discharge. Barnes continues to attempt to bring her claim under Maryland law, but, as discussed above, *see supra* Section I, Virginia law applies to her claim because any injury Barnes suffered occurred in

---

[2] Trinity responds to Barnes's arguments concerning her intake questionnaire in its surreply. The Court finds good cause for Trinity's surreply here, because it responds to arguments not raised in Barnes's original Motion for Leave to Amend. *See* Local Ryle 105.2(a) (D. Md.) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."); *Coryn Group II, LLC v. O.C. Seacrets, Inc.*, 868 F. Supp. 2d 468, 497 (D. Md. 2012) ("Leave to file a surreply may be granted when the movant otherwise would be unable to contest matters presented for the first time in the opposing party's reply.").

Virginia. Virginia, however, does not recognize her cause of action on these facts.[3] Finally, Barnes's proposed amendments do not cure her claim for reprisal, as she makes no new allegations in this Count of her Amended Complaint. Barnes also fails to rebut Trinity's assertion that it offered to reinstate Barnes to her former position, and Barnes did not respond to the offer. *See* ECF No. 15-2 (Email offer of reinstatement, Apr. 26, 2012); *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231-31 (1982) (a claimant forfeits her right to backpay if she "refuses a job substantially equivalent to the one he was denied"). For these reasons, the Court will deny Barnes's Motion for Leave to File an Amended Complaint. ECF No. 12.

## **CONCLUSION**

For the foregoing reasons, the Court will grant Trinity Protection Services, Inc.'s Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 8] and dismiss the Complaint [ECF No. 2]. The Court will deny Plaintiff's Motion for Leave to File an Amended Complaint [ECF No. 12], and grant Trinity Protection Services, Inc.'s Motion for Leave to File a

---

[3] Barnes alleges that she was terminated "in retaliation for reporting a suspected crime to law enforcement officials, which is contrary to public policy." ECF No. 14 at ¶ 27. Barnes cites Sections 9-303(a) and 9-301(d) from the Criminal Law portion of the Maryland Code in support of this assertion. *See* Md. Code Ann., Crim. Law. § 9-303(a) ("A person may not intentionally harm another, threaten to harm another, or damage or destroy property with the intent of retaliating against a victim or witness for . . . reporting a crime"); *id.* § 301(d) (defining "witness" as a person who "has knowledge of the existence of facts relating to a crime or delinquent act," or "has reported a crime or delinquent act to a law enforcement officer"). If Barnes's claim for abusive discharge were properly made under Maryland law, it might still fail because her termination did not violate a clear mandate of public policy. *See Adler v. American Standard Corp.*, 830 F.2d 1303, 1307 (4th Cir. 1987) ("Limitation of the claim for abusive discharge to situations involving the actual refusal to engage in illegal activity, or the intention to fulfill a statutorily prescribed duty, ties abusive discharge claims down to a manageable and clear standard. . . . [L]egislatures have traditionally been reluctant to impose affirmative obligations on citizens to report or prevent crimes because defining what is a crime and to whose knowledge is a very difficult and intrusive inquiry. . . . In the absence of a clear declaration by a legislature or the Maryland Court of Appeals that an action for abusive discharge should be extended to situations where the discharged employee claims to have had the knowledge and the intent to report wrongdoing to a higher corporate official, this court should not create such a ruling.").

Surreply to the Opposition to the Motion to Amend the Complaint [ECF No. 18].  A separate Order follows.


Date: August 29, 2013                                                    /s/
                                                              ROGER W. TITUS
                                                       UNITED STATES DISTRICT JUDGE